# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

NATHANIEL SIMS,

                              Plaintiff,

                                                      DECISION & ORDER

             -vs-
                                                      15-CV-6355-CJS

ANDREW ELLIS, ROBERT MOSKO, K. FOOSE, DAVID
WADE, and THOMAS COREY,

                              Defendants.

---

## APPEARANCES

For Plaintiff:                        Nathaniel Sims 93-A-3573 *pro se*
                                      Elmira Correctional Facility
                                      P.O. Box 500
                                      1879 Davis Street
                                      Elmira, NY 14901-0500

For Defendant:                        Hillel David Deutsch, Esq.
                                      NYS Attorney General's Office
                                      Department of Law
                                      144 Exchange Boulevard
                                      Rochester, NY 14614

## INTRODUCTION

**Siragusa, J.** Plaintiff Nathaniel Sims ("Sims") filed a complaint on June 10, 2015, ECF No. 1, alleging constitutional claims of excessive force, sexual assault, and failure to intervene. Pending before the Court are Defendants' motion for summary judgment on all of Plaintiff's claims, ECF No. 46, filed on November 21, 2018, Defendants' motion for sanctions, ECF No. 57, filed on March 1, 2019, and Plaintiff's cross-motion for sanctions, ECF No. 58, filed on March 11, 2019. For the reasons stated below, the Court will conduct an evidentiary hearing before deciding the pending motions.

## BACKGROUND

Plaintiff alleges that he was physically and sexually assaulted on February 21, 2015, while a prisoner at Five Points Correctional Facility, a New York State prison. His first claim is against Correction Officer Andrew Ellis ("Ellis"), who has not been served, and thus is not a party to this action. His second claim is that Correction Officer Robert Mosko ("Mosko") physically assaulted Plaintiff while he was handcuffed, assisted Ellis in his sexual assault, and failed to intervene to prevent Ellis from sexually assaulting him. His third claim is that Correction Sergeant David Wade ("Wade") also physically assaulted Plaintiff while calling out, "'Sims, stop resisting; stop resisting,' knowing that Plaintiff was in no position to do anything...." Compl. at 10. He further alleges that Wade did nothing to stop the other defendants from assaulting him. In a fourth claim, Plaintiff contends that Correction Lieutenant Thomas Corey ("Corey") was present and was the senior officer in charge during the time Plaintiff was physically and sexually assaulted and did nothing to stop it. Plaintiff's fifth claim is against Correction Officer K. Foose and alleges that Correction Officer Foose deliberately did not record Plaintiff's move, or erased the recording, which would have shown the physical and sexual assault. However, he has never been served, and thus is not yet a party to this action.

After setting out the factual basis for each claim, Plaintiff maintained that he exhausted administrative remedies, but that "every level 'claims' they never rec'd grievance" and he attached a handwritten memo addressed to "I.G.R.C." and dated February 25, 2015. In that memo, Plaintiff described the events included in his complaint. Memo from Nathaniel Sims to I.G.R.C. (Feb. 25, 2015) attached to Compl. at 16.[1]

---

[1] The exhibits attached to Plaintiff's complaint are not lettered or numbered. Therefore, the Court will refer to the page numbers assigned by the portable document software on the filed copy.

Also attached to the complaint are a follow-up memo Plaintiff sent to "Grievance Committee" dated March 18, 2015, seeking the status of his earlier grievance. Memo from Nathanial Sims to Grievance Committee (Mar. 18, 2015) attached to Compl. at 18. , and a letter to Plaintiff from "IGRC OFFICE" at Five Points dated April 1, 2015, stating: "Mr. Sims: There are no grievances on file for you from the date 2-25-15."

Defendants Mosko, Wade, and Corey (collectively "Defendants") argue that Plaintiff suffered no physical injuries on February 21, 2015, and never grieved the physical assaults or failure to intervene claims. Therefore, Defendants assert that Plaintiff's claims that he was physically assaulted, and his claim for failure to intervene, are precluded by 42 U.S.C. § 1997e(e). Defendants do not seek dismissal of Plaintiff's sexual assault claim. Instead, they seek dismissal of the physical assault claim, referred to above, and the failure to intervene claim, due to his failure to exhaust his administrative remedies. Alternatively, Defendants seek an evidentiary hearing on the issue of whether Plaintiff grieved the alleged physical assault and failure to intervene. Plaintiff counters with accusations against the defense, alleging that Defendants are lying about his failure to grieve these two issues, ECF No. 55, and with a motion for sanctions, ECF No. 58.

STANDARD OF LAW

*Summary Judgment*

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, ... demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and "the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a) (2015). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to

support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citation omitted).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Id.* at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## IRBY NOTICE

Per the Court's local rules, as well as the Second Circuit's decision in *Irby v. NYC Transit Auth.*, 262 F.3d 412 (2d Cir. 2001), Defendants provided Plaintiff pro se with a notice of his obligations in opposing summary judgment under Federal Rule of Civil Procedure 56. The notice stated:

Revised 05/01 WDNY

IMPORTANT NOTICE TO PRO SE LITIGANTS

RULE 56 MOTIONS FOR SUMMARY JUDGMENT

This Notice is to advise you that a party in your lawsuit has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which means that summary judgment will be granted if the Court finds that

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Failure to Respond to This Motion For Summary Judgment May Result in The Grant of Judgment in Favor of The Party Seeking Summary Judgment and The Dismissal of All or Part of The Case.

## Opposing Affidavits and Exhibits

Therefore, if the motion seeks summary judgment against you, you **MUST** submit opposing papers in the form of one or more affidavits (or affirmations) made upon the personal knowledge of the person signing each affidavit. Each affidavit must set forth admissible facts and must show that the person submitting that affidavit is competent to testify as to the matters stated therein (because he or she has personal knowledge of the facts set forth in the affidavit). If you wish to submit exhibits in opposition to the motion, you may attach to the affidavit (or submit separately) sworn or certified copies or all papers or parts thereof which are referred to in an affidavit.

## Statement of Material Facts Requiring a Trial

You **MUST** also submit a separate, short, and concise statement of the material facts as to which you contend there exists a genuine issue which must be tried. *See* Rule 56 of the Local Rules of Civil Procedure (available on the Western District web site at www.nywd.uscourts.gov). **Note** that all of the material facts which have been set forth in the statement served on you by the moving party (which that party claims are material facts about which there is no genuine issue to be tried) will be deemed to have been admitted by you unless you controvert the facts in your statement of material facts presenting a genuine issue requiring a trial.

## Memorandum of Law

You **MUST** also submit a separate answering memorandum of law, Local Rule 7.1(e), which may not exceed 25 pages in length without prior approval of the Court, Local Rule 7.1(f). Failure to comply may result in the motion being decided against the non-complying party.

W.D.N.Y. Loc. R. 56 Notice to Pro Se Litigants

(*available at* https://www.nywd.uscourts.gov/sites/nywd/files/Rule56Notice_0.pdf). As is

required, the Court liberally construed Plaintiff's complaint. *Haines v. Kerner*, 404 U.S. 519,

520 (1972).

## DISCUSSION

The primary issue to resolve is whether the evidentiary proof submitted on the motion, and in opposition thereto, establishes that Plaintiff did, or did not, grieve the alleged physical assault on his person, as well as his allegation of failure to intervene. In that regard, Defendants filed a statement of facts pursuant to the local rule. That rule requires notice to a pro se plaintiff, which, as stated above, Defendants also filed. The Court issued a motion scheduling order on December 7, 2018, ECF No. 47, requiring Plaintiff to file his response by January 4, 2019. On December 10, 2018, Plaintiff filed what he titled Rule 56 Statement, ECF No. 48.

In his response, Plaintiff claims that on February 21, 2015, he was sexually and physically assaulted by correctional officers. Pl.'s Rule 56 Statement ¶¶ 1–14. Days later, upon returning to his cell, he contends that he filed his "initial grievance about being sexually abused. Grievance was handed to [an] officer to be placed in the facility's mailbox per procedure." Id. ¶ 15. He then relates the following:

> After weeks of no reply from grievance Plaintiff filed an appeal to the superintendent. When plaintiff saw no forthcoming response from the superintendent Plaintiff appealed to C.O.R.C. in Albany. All per Directive # 4040 which governs inmate grievances. [See Section (V) time limits], which clearly state if there is no answer to grievance by the time allotted Plaintiff can appeal to the next level.

Id. ¶ 16. Included with Plaintiff's Statement are copies of his appeals, but no copy of his initial grievance.

Unopposed by Plaintiff's Statement are the following facts asserted by Defendants about the February 21, 2015, incident that started in the correctional facility's property room:

> 1) On February 21, 2015, Plaintiff was in the Five Points property room when he was observed secreting an unknown object down the back of his pants. (Declaration of Deutsch) Because of Plaintiff's behavior, staff were concerned for his well-being and ordered him to the infirmary for a strip search and

one-on-one observation. (Id.)

2) Plaintiff accused staff of breaking or withholding his property and refused numerous direct orders to leave the property room unless he spoke to a sergeant. (Deposition of Sims pp. 27-33). Sgt. Wade arrived; Plaintiff demanded to speak with a lieutenant. (Id.) Lt. Corey arrived, Plaintiff still refused to leave the property room. (Id.) After about ten minutes of Lt. Corey asking Plaintiff to leave the property room, Plaintiff agreed to be handcuffed and was escorted to the infirmary; Officer Foose was responsible for videotaping the escort. (Id.)

3) Once in the infirmary, Plaintiff was given numerous orders to remove his clothing for a strip search; Plaintiff refused the orders and did not respond, at which point he was taken to the ground and his clothing cut off and the strip search performed. (Id. pp. 32-33) Plaintiff ignored the orders because "I was at the point where I... was beyond talking to anybody. I didn't have anything to say to anybody. I was upset. I just didn't -- I didn't want to be bothered and I just wasn't compliant. I just wasn't in the -- in the mood to comply and I just didn't say anything." (Id. p. 33).

4) When staff attempted to conduct the frisk, Plaintiff was "kicking as much as I could with the restraints on." (Id. p.34)

5) Plaintiff did not see Officer Foose do anything like turning off the camera or pressing any buttons. (Id. pp. 40-41).

6) Plaintiff had no injuries from the alleged physical assault or from the alleged sexual assault. (Id. pp. 55-56, Plaintiff's medical records).

7) Plaintiff was photographed, but was extremely agitated and non-compliant with the photographing process. (Declaration of Deutsch).

8) Following the photographs being taken, Plaintiff began banging his elbow against the window, cutting it open. (Id. p. 73). In Plaintiff's words, "I busted my elbow open on the window. I did that to myself and it was bleeding." (Id. p. 52 )

9) Two days later, Plaintiff told medical staff he had been sexually assaulted. (Id. pp. 57-58). He did not tell them he had been physically assaulted. He did not say anything about the alleged physical assault to medical staff at Five Points, medical staff at Cayuga Medical Center, at his misbehavior hearing, or in his interview with the Inspector General's Office. (Declaration of Deutsch).

10) Immediately following the allegation of sexual assault Plaintiff was taken to Cayuga Medical Center and examined. (Declaration of Deutsch) Plaintiff told staff at CMC that an officer had digitally penetrated him; he did not claim anyone had kicked, punched or slammed him to the ground. (Id.) The medical examination found no evidence of physical or sexual trauma, and the stool sample tested negative for blood. (Id.)

11) Plaintiff was also interviewed by the Inspector General's Office the day he claimed to have been digitally penetrated following a strip frisk. (Id.) Plaintiff's signed, sworn statement contains no allegation of physical assault, failure to protect,[2] staff tampering with the camera, or an officer placing his fingers in Plaintiff's nose and making derogatory remarks. (Id.)

12) There is no record of Plaintiff filing a grievance pertaining to the alleged physical assault or failure to protect. (Id.)

Def.s' Rule 56 Statement ¶¶ 1–11, Nov. 21, 2018, ECF No. 46-1. One of Defendants' statements could be considered as controverted by Plaintiff:

13) After being informed there was no record of a grievance, Plaintiff did not attempt to file a grievance but instead appealed the nonexistent grievance to CORC. (Id.)

*Id.* ¶¶ 12–13. Plaintiff maintains that he did file a grievance, but that the facility lost it, so he had no choice but to appeal. Included among the exhibits Defendants submitted is a report of Plaintiff's closed inmate grievances from July 31, 1998, through September 9, 2009. Def. Ex. G, which Defendants contend show that Plaintiff filed no grievance for the February 2015 incident.[3] Further, when shown an exhibit at his deposition, Plaintiff was asked the following questions and gave the following responses:

Q. Okay. Can you tell me what this document is? What's been marked as Exhibit Eight?

A. It says that there was [sic] no grievances filed for me from date 2/25/15, but I never received this.

Q. Okay. You've never seen this document before?

A. No.

---

[2] Although Defendants use the phrase, "failure to protect," due to the nature of Plaintiff's allegations, the Court interprets his claim as one of failure to intervene. DOCCS Correctional Officers "have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

[3] As Defendants point out in their memorandum of law, Plaintiff did complain about the sexual assault to the facility medical staff, and the inspector general was then informed and conducted an investigation.

Q. Okay. So as far as you're concerned, Exhibit Eight, you've never seen that document before, so you did not receive this at any point prior today I guess?

A. No.

Sims Dep. 85:23–86:10. Exhibit Eight, according to defense counsel, is the same as the memorandum dated April 1, 2015, from the Five Points Grievance Office and attached to Plaintiff's complaint (at pdf page 21). Plaintiff filed his complaint on June 10, 2015, ECF No. 1, and the deposition took place on September 21, 2018, ECF No. 46-3.

## DISCUSSION

The issue before the Court on Defendants' motion is a question of whether Plaintiff has complied with the Prison Litigation Reform Act's exhaustion requirement which states in pertinent part as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 USCS § 1997e(a) (2013). The case law in this Circuit directs that the Court resolve the factual dispute since a litigant has no "right to a jury trial on factual disputes regarding an inmate's failure to exhaust administrative remedies as required by the PLRA...." *Messa v. Goord*, 652 F.3d 305, 308 (2d Cir. 2011). This issue must be resolved before the Court can take any action on the underlying merits of Plaintiff's case. The Second Circuit in *Messa* approved of the district court's handling of this issue. There, the district court denied summary judgment and scheduled a trial. However:

> The Friday before trial was to begin, the district court announced its plan to conduct an evidentiary hearing on exhaustion before impaneling a jury. On Monday, it denied Messa's request for an adjournment and heard testimony from both sides. Ruling from the bench, the court rejected Messa's excuses as contrary to the evidence.... Hence, the district court dismissed the remainder of the complaint without prejudice to refiling upon exhaustion. The trial never took

place.

*Messa*, 652 F.3d at 308. Here, Plaintiff claims that he did exhaust, but that correctional officials failed to properly process his grievance. Further, he claims that he never saw a letter from CORC, yet that same letter is attached to his complaint. Notwithstanding that he was informed once orally, and once in writing, that the administration had no grievance from him, Plaintiff failed to file one, or another one if he had indeed filed one previously.

To resolve this factual dispute, the Court must judge the credibility of witnesses, as Defendants have acknowledged in their memorandum of law: "[W]hether or not Plaintiff filed a grievance is a question of fact which must be decided at a hearing in advance of trial." Def.s' Mem. of Law 9. Citing *Delgado v. Potter*, No. 9:13-CV-728 (DNH/CFH), 2015 WL 667551, 2015 U.S. Dist. LEXIS 18602 (N.D.N.Y. Feb. 17, 2015), Defendants contend that if the Court cannot dismiss the physical assault and failure to intervene claims based on the papers, that in the alternative, it conduct an evidentiary hearing prior to trial, noting that:

> the Second Circuit has held that disputed facts do not convert exhaustion into a jury issue. *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011). Instead, the appropriate remedy would be to hold a hearing on the issue of exhaustion. *Id*.; *see also Nelson v. Plumley*, No. 9:12-CV-422, 2014 U.S. Dist. LEXIS 129973, 2014 WL 4659327, at *1 (Sept. 17, 2014) (McAvoy, S.J.) (adopting Report-Recommendation of Peebles, J.) ("An evidentiary hearing is necessary to determine whether Plaintiff exhausted his administrative remedies with respect to his remaining excessive-force claim against Defendants....").

*Delgado*, 2015 U.S. Dist. LEXIS 18602, at *4–5. In *Messa*, the Second Circuit rejected the argument that "a valid excuse for non-exhaustion is a task for the jury." *Messa*, 652 F.3d at 3009. Instead, the Court of Appeals wrote:

> [T]he Seventh Amendment's guarantee of the right to "the ultimate determination of issues of fact by the jury," *In re Peterson*, 253 U.S. 300, 309–10 (1920), does not extend to the "threshold issue[s] that *courts* must address to determine whether litigation is being conducted in the right forum at the right time," *Dillon*, 596 F.3d at 272 (emphasis added). As one of our sister courts

put it, "[j]uries decide cases, not issues of judicial traffic control." *Pavey,* 544
F.3d at 741.

*Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) (quoting *Dillon v. Rogers*, 596 F.3d 260,

272 (5th Cir. 2010) and *Pravy v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)).

## CONCLUSION

Because a decision on the exhaustion issue must necessarily precede any further ac-

tion in this case, the Court will conduct an evidentiary hearing on that issue to determine

whether the claims in the complaint have been exhausted as required by federal and state

law. By separate order, the Court will set a date for the hearing, which it intends to conduct via

video conference with Plaintiff, and with Defendants' counsel in the courtroom. Thereafter,

the Court will decide the pending sanction motions.

IT IS SO ORDERED.

Dated:   October 4, 2019
         Rochester, New York        ENTER:

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge